

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Ex rel. CHASE L. DEAR** | **PLAINTIFF** |
| **V.** | **CAUSE NO.** 3:16cv 88 CWR-LRA |
| **BRANDI'S HOPE COMMUNITY**<br>**SERVICES LLC and DANNY O. COWART** | **DEFENDANTS** |

**FILED UNDER SEAL**
**JURY TRIAL DEMANDED**

## COMPLAINT

The United States of America, by and through qui tam relator Chase L. Dear ("Relator" or "Dear"), brings this action to recover all damages, penalties, and other remedies established by, inter alia, the False Claims Act and other applicable laws.   The Defendants, BRANDI'S HOPE COMMUNITY SERVICES LLC ("BRANDI'S HOPE") and DANNY O. COWART ("COWART"), have submitted numerous fraudulent claims for compensation to the United States for services allegedly provided to the intellectually and/or developmentally disabled clients of BRANDI'S HOPE, resulting in egregious harm to the many of those clients and the United States.  In the process, Defendants have defrauded the United States and the State of Mississippi by seeking, and receiving, substantial reimbursement from the Mississippi Medicaid program for care purportedly provided to these individuals, despite

knowing that such "care" was either not provided at all or was so inadequate as to be worthless.

The United States of America therefore files this Complaint against Defendants, jointly and severally, for damages under the False Claims Act, 31 U.S.C. §§ 3729-3733, the common law theory of fraud, and the common law or equitable theory of unjust enrichment. In support thereof, the United States alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1345, 1367(a) and the False Claims Act, 31 U.S.C. §§ 3730, 3732.

2.  Venue is proper in this district under 28 U.S.C. §§ 1391 and 1395(a), and 31 U.S.C. § 3732(a) because the acts alleged in this Complaint occurred in the Southern District of Mississippi, Eastern Division.

3.  This Court has personal jurisdiction over each Defendant based upon the transaction of business within this judicial district.

## PARTIES

4.  The United States brings this action to recover losses incurred by its agency, the Department of Health and Human Services (HHS), and its operating division, the Centers for Medicare & Medicaid Services (CMS).

HHS provides funding for, and regulates payments for participants in the Medicaid program.

5.   Defendant BRANDI'S HOPE COMMUNITY SERVICES LLC is a Mississippi limited liability corporation, and may be served by delivering the summons and complaint to its agent for service of process, Danny O. Cowart, 184 Tugwell Road, Magee, MS 39111.

6.   Defendant DANNY O. COWART is the managing member of BRANDI'S HOPE and may be served with process at 184 Tugwell Road, Magee, MS 39111.

## SUMMARY OF ALLEGATIONS

7.   From at least approximately April 1, 2013 until October 29, 2015, and thereafter (hereinafter the "relevant period"), Defendants BRANDI'S HOPE and COWART submitted or caused to be submitted false or fraudulent claims to the Mississippi Medicaid program for services that were not provided or rendered to patients, were worthless, deficient, inadequate, substandard, and/or did not promote the maintenance or enhancement of the quality of life of the clients of BRANDI'S HOPE, and were of a quality that failed to meet professionally-recognized standards of health care (hereinafter "fraudulent claims").

8.   During the relevant period, Defendants caused egregious harm to the United States and numerous individual clients through this fraudulent

conduct, abuse and neglect at BRANDI'S HOPE. During the relevant period, Defendants knowingly directed and approved of the billings by BRANDI'S HOPE to the Mississippi Medicaid program, and knowingly accepted and approved of the receipt by BRANDI'S HOPE of Mississippi Medicaid funds, despite knowing that the services provided to BRANDI'S HOPE patients were not provided or were so deficient or inadequate as to be worthless.

9.  During the relevant period, Defendants perpetrated a fraud on the United States by making materially false representations in the submission of the Mississippi Medicaid claims.

10.  The Defendants were unjustly enriched by the improper payments from the Mississippi Medicaid program and should be required to account for and disgorge their unlawful profits.

## MEDICAID REIMBURSEMENT

11.  Through Mississippi Medicaid, the United States and the State of Mississippi pay for certain medical care for the disabled and those who meet certain income requirements.

12.  At all relevant times, HHS, through CMS, administered the Medicaid program.

13.  Medicaid is a joint federal-state program funded under Title XIX of the Social Security Act to provide health coverage for eligible, low income

populations.    All 50 states, five territories of the United States and District of Columbia participate in this voluntary matching program.

## MISSISSIPPI MEDICAID'S INTELLECTUAL DISABILITIES/DEVELOPMENTAL DISABILITIES (ID/DD) WAIVER

14.    The vast majority of services provided by BRANDI'S HOPE are funded through Mississippi Medicaid's ID/DD waiver program, which provides a variety of services to individuals with intellectual disabilities and developmental disabilities.  An intellectual disability is characterized by limitations in intellectual functioning and difficulties in a variety of everyday social and practical skills. A developmental disability is attributed to a cognitive or physical impairment that results in limitations in areas such as self-care, language, and mobility.

15.    The Mississippi Department of Mental Health ("DMH") is responsible for the development and implementation of services to meet the needs of individuals with intellectual and developmental disabilities.  This public service delivery system is comprised of five state operated comprehensive ID/DD programs, a state operated program for youth who require specialized treatment, 15 regional community mental health/ID/DD centers and other community agencies/organizations that provide community services.  Community Services are available throughout the state for individuals with intellectual and developmental disabilities.

16. Mississippi's ID/DD Waiver provides individualized supports and services to assist people in living successfully at home and in the community and are an alternative to care in institutional settings.

17. These Medicaid funded supports and services are available as long as the cost of supporting individuals in the home or community does not exceed the cost of caring for individuals in institutional settings.

18. The ID/DD Waiver funds an array of services aimed at assisting people to live as independently as possible in their home and community. Services include:  Supported Employment, Home and Community Supports, Supervised Residential Habilitation, Day Services-Adult, In-Home Nursing Respite, Community Respite, ICF/MR Respite, Prevocational Services, Specialized Medical Supplies, Behavior Support/Intervention Services, and Speech, Occupational and Physical Therapy.

## DEFENDANTS' FRAUDULENT CONDUCT

19. During the relevant period, certain services supposedly provided by BRANDI'S HOPE to intellectually and/or developmentally disabled individuals were either not provided at all or were grossly deficient, inadequate, substandard, and/or did not promote the maintenance or enhancement of the quality of life of the clients of BRANDI'S HOPE, and

were of a quality that failed to meet professionally-recognized standards of health care (hereinafter "fraudulent claims").

20. For example, clients have repeatedly suffered painful, debilitating, and unconscionable injuries as a consequence of the neglect of basic hygiene care and related client supports, despite BRANDI'S HOPE submitting claims for these services for and receiving payment by the government.

21. For instance, during August of 2013, client A.S. was not provided appropriate assistance and support with hygiene care and as a result was forced to sit in his own feces for hours on end, wear dirty, foul clothing, and routinely was unable to bath for up to a week at a time.

22. In another instance in August of 2013, A.S. and two other clients (J.M. and F.M.) were not assisted with bathing for at least three days. This lack of proper care had previously been reported to the site manager. Another client (L.L.) has reported a lack of adequate provision of meals as a result of insufficient food and/or lack of assistance and appropriate care. These actions were taken with the intent and effect of committing fraud on Medicaid by receiving compensation for services that are not rendered or are otherwise worthless or worse. They are also criminal under the Mississippi Vulnerable Adults Act. *See* Miss. Code Ann. § 43-47-19(1) ("It shall be unlawful for any person to abuse, neglect or exploit any vulnerable adult.").

23.   Defendants also repeatedly fail to assist clients with medical and dental care, including annual checkups, vaccinations, and emergency care. One client, T.L., has repeatedly been denied appropriate medical services pertaining to feminine hygiene. This has continued for at least a year since 2014.

24.   Another BRANDI'S HOPE client (J.R.) reported that he had received no dental care at all for at least one year since admission to BRANDI'S HOPE. J.R. later informed his psychiatrist (during July of 2013) that he had plans to "murder" the site manager, and the psychiatrist recommended immediate medical treatment. This medical treatment was denied by BRANDI'S HOPE and COWART against psychiatric/medical advice. These actions were taken with the intent and purpose to defraud Medicaid by continuing to receive payment for fraudulent claims for this patient's alleged care.

25.   BRANDI'S HOPE's intellectually and/or developmentally disabled clients are often unsupervised and allowed to wander off from the premises for extended periods of time with no supervision or other support, despite BRANDI'S HOPE's submitting false claims for such care to the government. For example, since approximately 2014, one client, J.G., is frequently allowed to walk in the street and spend the day at a gas station nearby with no staff member present, despite BRANDI'S

HOPE submitting claims to Medicaid for services that include appropriate supervised residential habilitation.

26. Similarly, on approximately December 28, 2015, client D.T. was left alone at his BRANDI'S HOPE residence with no staff member on site. These actions were taken with the intent and effect of committing fraud on Medicaid by receiving compensation for services that are not rendered or are otherwise worthless or worse.

27. BRANDI'S HOPE also continually uses staff members that are either not trained in the Mandt System (which is explicitly required by the Department of Mental Health) or their certification has expired. [1] BRANDI'S HOPE's submission of claims for payment for services provided by these staff members are false and fraudulent.

28. Defendants also interfere with several other eligible services which results in the diminution of care for clients and defrauding of the government. For example, Direct Support Professionals (DSP's) [2] have been instructed by BRANDI'S HOPE not to communicate with Support

---

[1] "The Mandt System is a comprehensive, integrated approach to preventing, de-escalating, and if necessary, intervening when the behavior of an individual poses a threat of harm to themselves and/or others. The focus of The Mandt System is on building healthy relationships between all the stakeholders in human service settings in order to facilitate the development of an organizational culture that provides the emotional, psychological, and physical safety needed in order to teach new behaviors to replace the behaviors that are labeled 'challenging'". http://www.mandtsystem.com/ (last visited February 7, 2016).

[2] DSPs are responsible for all direct care, including but not limited to personal hygiene, meal preparation, maintaining a safe environment, assisting in leisure activities, and the like. They are the individuals who provide the most direct, hands-on care for BRANDI'S HOPE clients.

Coordinators.[3]  Clients were also encouraged to avoid contact with Support Coordinators and parents/guardians.  These actions were taken with the intent and effect of committing fraud on Medicaid by ensuring that BRANDI'S HOPE would continue receiving compensation for services for these clients, services that are not rendered or are otherwise worthless.

29.  DSPs were also ordered to write only positive notes in each client's contact summary.  This was done to conceal negative occurrences from outside agencies.  Frequently, contact summaries were not done for numerous days each month, and in some instances were ordered to be altered.  In early 2013, for example, one staff member was not only told to write only positive comments, but was told to revise a contact summary involving an individual attempting to burn down his BRANDI'S HOPE residence.

30.  BRANDI'S HOPE also regularly engages in forgery and/or misrepresentations with respect to environmental records (*i.e.*, documents which are required to demonstrate that the client environment is safe, such as water temperature, fire extinguisher inspections, disaster drills, fire drills, and the like).  For example, in July

---

[3] Support Coordinators are employed by the Mississippi Department of Mental Health.  Their primary responsibility is to ensure that all clients within their responsibility are properly cared for and are receiving all needed services as applicable to each client's specific needs.

of 2015, one staff member reported her signature to have been forged on multiple such documents. These acts were taken with the intent to defraud the government by fraudulently implying regulatory and other compliance in order to continue to receive payment from Medicaid.

31.    BRANDI'S HOPE has also abused and neglected clients financially by repeatedly failing to provide clients access to their own funds in order that they might obtain sufficient food during weekends and other necessary hygiene and similar items needed for personal care. For example, upon admission to BRANDI'S HOPE, one client (A.L.) was forced to live for at least one month without access to her own funds in order to obtain such necessities. Similarly, in approximately October of 2015, client C.D. was unable to obtain her funds for similar necessities for at least a month. Client P.H. was completely denied access to her own funds for at least two months beginning in November of 2015. When she finally obtained access to funds, previously inaccessible funds were not made available to her.

32.    BRANDI'S HOPE also repeatedly refuses to submit serious incident reports to the State and/or legal guardians as required by law. This is done so that BRANDI'S HOPE might continue to receive compensation for fraudulent claims submitted for residential rehabilitation and/or day services. For example, in September of 2013, client M.K. had repeatedly

threatened to commit suicide and held a knife and other objects to his throat (stating that "the devil" had told him to do it, that he heard voices, and had other delusional thoughts), and no serious incident report was submitted to the State as required by law.

33.   Similarly, on or about August 11, 2013, client C.C. attacked two staff members and attempted to "go AWOL".  Staff called 911 and C.C. was transported to Forrest General and received treatment.  Subsequent to this event, C.C. repeatedly harmed both other clients and staff, and went AWOL, and serious incident reports were not completed and submitted as required by law.

34.   Similarly, in January of 2016, client M.A. went AWOL for hours and no serious incidence report was submitted as required by law.  All of these actions were taken with the intent to defraud the government for payment by Medicaid.

35.   Also, since 2013, BRANDI'S HOPE has repeatedly submitted false claims to Medicaid for services allegedly provided in the "Day Program," whereby BRANDI'S HOPE submitted claims for time alleged to have spent with clients in the Day Program who were not present, or who were not supervised according to Department of Mental Health staff-to-client ratios.

36. It is also believed that BRANDI'S HOPE repeatedly bills Medicaid for services, at times that the clients are using their Medicaid benefits at another provider, such as medical and psychiatric services. For example, on March 16, 2015, client J.J. had a dentist appointment at 1:00 pm. Similarly, client S.E. had a psychiatric appointment on March 16, 2015 at 11 a.m. These appointments coincide with Day Program billing hours of Brandi's Hope Community Services LLC.

37. Defendants consistently and repeatedly fail to provide adequate and competent supervision and a safe environment, resulting in extreme neglect and harmful consequences to clients.  For example, BRANDI'S HOPE clients engage in impermissible sexual intercourse with each other due to a lack of sufficient and proper supervision.

38. BRANDI'S HOPE consistently and repeatedly submits claims and is paid by Medicaid for services that are not rendered or are so deficient or inadequate as to be worthless.  BRANDI'S HOPE is required to have sufficient staff to provide services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each client, as determined by client assessments and individual plans of care.

39. BRANDI'S HOPE did not maintain staff sufficient to provide the level of services necessary for its clients to attain or maintain their highest practicable physical, mental and psychosocial well-being.

40.    The lack of sufficient staff at BRANDI'S HOPE directly caused and contributed to care at BRANDI'S HOPE that failed to meet professionally recognized standards of health care and that was so deficient, inadequate, and substandard as to constitute worthless services.

41.    As a result, the services purportedly provided were so lacking in quality as to be essentially worthless, in that they (i) were not provided or rendered at all, (ii) were deficient, inadequate and substandard when provided, (iii) did not promote the maintenance or enhancement of the quality of life of the clients of BRANDI'S HOPE, and (iv) were of a quality that failed to meet professionally recognized standards of care.

42.    Other false claims for payment for other clients that are not specifically set forth in the paragraphs below were also submitted or caused to be submitted by the Defendants Mississippi Medicaid.

43.    The claims were false and fraudulent because the services purportedly provided were so lacking in quality as to be essentially worthless, in that they (i) were not provided or rendered at all, (ii) were deficient, inadequate and substandard when provided, (iii) did not promote the maintenance or enhancement of the quality of life of the clients of BRANDI'S HOPE, and (iv) were of a quality that failed to meet professionally recognized standards of care.

## CLAIMS AGAINST DEFENDANTS
### Count I: False Claims Act
### 31 U.S.C. § 3729(a)(1)

44.   The United States restates and incorporates by reference paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.   By virtue of the acts described above, and as specifically set forth in paragraphs 1 through 43, Defendants knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval by Medicare or Mississippi Medicaid in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), as amended.

46.   The Defendants represented that the claims were true and correct and that the services identified in the claims were provided in compliance with applicable laws and regulations.

47.   However, the claims were false in that they were submitted for services that were essentially worthless, inasmuch as they were not rendered or were deficient, inadequate, substandard, did not promote the maintenance or enhancement of the quality of life of the clients of the facility, and failed to meet professionally-recognized standards of health care.

48.   Pursuant to the False Claims Act, Defendants are liable to the United States for statutory damages as allowed by law and civil penalties for

each of these false or fraudulent claims in an amount to be determined at trial.

### Count II: Knowingly Presenting False Claims
### (31 U.S.C. § 3729(a)(1), § 3729(a)(1)(A))

49. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 48, as if fully set forth herein. This Count is a civil action against all Defendants for violating 31 U.S.C. § 3729(a)(l) (2008) or, alternatively, 31 U.S.C. § 3729(a)(l)(A) (2009).

50. Defendants have knowingly presented, or caused to be presented, false claims for payment to officials or employees of the United States Government.

51. Because of the Defendants' conduct under this Count, the United States has suffered actual damages in an amount to be determined at trial.

### Count III: False Records or Statements
### (31 U.S.C. § 3729(a)(2) (2008), § 3729(a)(l)(B) (2009)

52. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 51 as if fully set forth herein. This Count is a civil action against all Defendants for violating 31 U.S.C. § 3729(a)(2) or, alternatively, 31 U.S.C. § 3729(a)(l)(B).

53. Defendants have knowingly made or used, or caused to be made or used, false statements for the purpose of getting false or fraudulent claims paid or approved by the Government. Defendants have made or used these

false statements, or caused them to be made or used, with the specific intent to get paid by the United States Government.

54. Because of the Defendants' conduct under this Count, the United States has suffered actual damages in an amount to be determined at trial.

## Count IV: Improperly Failing to Repay Money Owed to the United States (31 U.S.C. § 3729(a)(1)(G))

55. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 54 as if fully set forth herein. This Count is a civil action against all Defendants for violating 31 U.S.C. § 3729(a)(I)(G).

56. Defendants have knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States Government.

57. Defendants have knowingly concealed, or knowingly and improperly avoided or decreased, an obligation to pay or transmit money to the United States Government.

58. Because of the Defendants' conduct under this Count, the United States has suffered actual damages in an amount to be determined at trial.

## Count V: False Claims Act Anti-Retaliation Provision 31 U.S.C. § 3730(h)

59. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 58 as if fully set forth herein. This Count is a civil

action against all Defendants for violating the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h).

60. During the course of his employment, Relator Dear investigated numerous instances where he reasonably believed that Defendants were violating the False Claims Act. Dear made numerous reports to his supervisors and others regarding Defendants' fraudulent conduct and violations of the False Claims Act. Plaintiff also repeatedly attempted to stop Defendants' violations of the False Claims Act, including by educating Defendants' staff about the specific fraudulent practices and how to avoid engaging in them. Defendant COWART explicitly threatened to retaliate against Dear and did in fact do so under false pretenses.

61. Defendants were aware that Plaintiff had engaged in activities in furtherance of a potential action under the qui tam provisions of the False Claims Act. Defendants were also aware of Dear's efforts to stop violations of the False Claims Act and other applicable laws.

62. Because Relator Dear was engaged in activities that are protected under the False Claim Act's anti-retaliation provision, 31 U.S.C. § 3730(h), Defendants repeatedly retaliated against Plaintiff, culminating in their termination of Plaintiff's employment. Upon Plaintiff's reports of Defendants' fraudulent conduct, Defendants began severely harassing

Plaintiff, conduct that continued through the end of Plaintiff's employment. When Plaintiff continued to attempt to stop Defendants' fraudulent conduct, Defendants terminated his employment.

63. As a direct and proximate result of the foregoing, Plaintiff has lost the benefit and privileges of employment, and has suffered additional economic and non-economic damages, including severe emotional anguish and irreparable, continuing harm to his career. Plaintiff is entitled to all relief necessary to make him whole.

### Count VI: Common Law Fraud

64. The United States restates and incorporates by reference paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65. The Defendants submitted claims for reimbursement for care purportedly provided to clients of BRANDI'S HOPE to the Mississippi Medicaid program, or its agents and fiscal intermediaries, for services that were not rendered or were deficient, inadequate, substandard, did not promote the maintenance or enhancement of the quality of life of those clients, were of a quality that failed to meet professionally recognized standards of health care, and were worthless. The Defendants represented that the claims were true and correct and that the services identified in the claim were provided in compliance with applicable laws and regulations.

66.  The Defendants knew that the claims were materially false and the Defendants intended to deceive Mississippi Medicaid through the submission of those claims.

67.  Mississippi Medicaid relied upon the representations made by the Defendants and took action in reliance upon those claims, including payment of the claims.

68.  As a result, the United States is entitled to compensatory damages consisting of the total amount paid by Mississippi Medicaid for the fraudulent claims, plus interest, and other compensatory and punitive damages to be determined at trial.

## Count VII: Unjust Enrichment

69.  The United States restates and incorporates by reference paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.  During the relevant period, Defendants received and retained the benefit of federal monies paid from the Mississippi Medicaid program and intended to reimburse Defendants for care provided to BRANDI'S HOPE clients, including but not limited to the clients specifically identified above.

71.  The care and services for which the Mississippi Medicaid programs paid Defendants were not rendered, or were deficient, inadequate, substandard, did not promote the maintenance or enhancement of the

quality of life of those clients, were of a quality that failed to meet professionally recognized standards of health care, and were worthless.

72.    In light of the failure of care at BRANDI'S HOPE, Defendants have been unjustly enriched with federal monies from the Mississippi Medicaid programs which they should not in good conscience be permitted to retain. The amount of those monies is to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, ex rel. Chase L. Dear, demands judgment against Defendants as follows:

a.    With respect to Counts I – IV brought pursuant to the False Claims Act, joint and several judgment against the Defendants and in favor of the United States, and a determination by the Court for an appropriate award of statutory damages allowed by law, specifically including treble damages, plus civil penalties of $5,500 to $11,000 for each of the false claims presented or caused to be presented;

b.    With respect to Count I – IV and VII, judgment against the Defendants and in favor of the United States for the amounts paid by Mississippi Medicaid for all erroneous, inflated or improper claims that were obtained by or resulted from the Defendants' fraudulent scheme during the relevant period, plus punitive damages;

c.    With respect to Count V, judgment against Defendants for Relator Dear's loss of the benefits and privileges of employment, economic and non-economic damages, including severe emotional anguish and irreparable, continuing harm to his career, and all relief necessary to make him whole.

d.    With respect to Count VI, a judgment in equity against Defendants for the amount by which the Defendants were unjustly and unlawfully enriched; and

e.    With respect to each Count, interest, attorney's fees and costs as allowed by law, and any and all further relief as the Court deems just and proper. Pursuant to Federal Rule of Civil Procedure 38, the United States demands a trial by jury on all issues raised in its Complaint.

BY: _____

BRADLEY S. CLANTON; MSB #10505

Bradley S. Clanton (MSB # 10505)
CLANTON LEGAL GROUP, PLLC
P.O. Box 4781
Jackson, Mississippi 39296
Direct (601) 869-0869
Toll Free: (844) 425-2686
Facsimile: (866) 421-9918
brad@clantonlegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this Complaint and written disclosure of substantially all material evidence and information Relator possesses has been served on the Government as provided in FRCP 4.

Dated:  February 8, 2016.

By: _____